**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BRIAN P. FROELICH,
                    *Plaintiff-Appellee,*

v.

SENIOR CAMPUS LIVING, LLC,
                    *Defendant-Appellant,*

and

JOHN C. ERICKSON; NANCY ERICKSON;
SCL, INCORPORATED; ERICKSON
RESOURCE TRUST; SCL
CONSTRUCTION, INCORPORATED;
SUBCO, INCORPORATED; SENIOR
CAMPUS LIVING HOLDINGS LLC,
                    *Defendants.*

No. 00-1859

BRIAN P. FROELICH,
                    *Plaintiff-Appellee,*

v.

JOHN C. ERICKSON; NANCY ERICKSON;
SCL, INCORPORATED; ERICKSON
RESOURCE TRUST; SCL
CONSTRUCTION, INCORPORATED; SENIOR
CAMPUS LIVING LLC; SUBCO,
INCORPORATED; SENIOR CAMPUS
LIVING HOLDINGS LLC,
                    *Defendants-Appellants.*

No. 00-1908

BRIAN P. FROELICH,
              *Plaintiff-Appellant,*

                    v.

JOHN C. ERICKSON; NANCY ERICKSON;
SCL, INCORPORATED; ERICKSON
RESOURCE TRUST; SCL
CONSTRUCTION, INCORPORATED; SENIOR
CAMPUS LIVING LLC; SUBCO,
INCORPORATED; SENIOR CAMPUS
LIVING HOLDINGS LLC,
              *Defendants-Appellees.*

No. 00-1919

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-98-694-L)

Argued: February 28, 2001

Decided: March 15, 2001

Before MICHAEL, MOTZ, and TRAXLER, Circuit Judges.

Affirmedy by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** James David Mathias, PIPER, MARBURY, RUDNICK
& WOLFE, L.L.P., Baltimore, Maryland, for Appellants. Michael
John Collins, THOMAS & LIBOWITZ, P.A., Baltimore, Maryland,
for Appellees. **ON BRIEF:** Glen K. Allen, John R. Wellschlager,
PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore,

Maryland, for Appellants. John P. Beyel, MCELROY, DEUTSCH & MULVANEY, Morristown, New Jersey, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Brian P. Froelich, a former chief executive officer and director of Senior Campus Living, LCC (SCL) brought this action against the company, its founder, John Erickson, his wife, Nancy Erickson, and various related entities.

I.

Erickson recruited Froelich to take over management of SCL so that Erickson might pursue other interests. However, after several years, when faced with corporate liquidity problems, SCL removed Froelich as chief executive officer and replaced him with Erickson. A few weeks later, Erickson proposed that he would provide a personal $35 million guarantee for the company's loans if SCL agreed to a restructuring. Pursuant to the proposal, the company's membership interests would be reclassified. If the total value of the reclassified interests was less than or equal to Erickson's preferred interests, which totaled approximately $160 million, Erickson would own virtually 100% of the company, but any value that exceeded $160 million would be held by those owning the remaining preferred and common interests in the company.

Except for Froelich, all sixteen members of SCL's Board of Directors (which included all those with membership interests in the company) agreed to this proposal. The Board retained Coopers & Lybrand to appraise the company; Coopers valued SCL at $155 million. Accordingly, Erickson received more than 99.9% of the reclassified

common interests and the remaining members, including Froelich, received the fractional balance. A month later, the members of SCL, as a housekeeping matter, voted to approve a squeeze-out merger that eliminated the remaining fractional interests in exchange for cash.

In response to these actions, Froelich filed the instant suit, seeking relief in a fourteen count complaint, which included tort, contract, and statutory claims. After extensive discovery, exhaustive briefing, and eight hours of oral argument, the district court granted the defendants summary judgment on most counts, but granted Froelich summary judgment on his employment contract claim and his request for a statutory appraisal. SCL and Froelich appeal.

## II.

We have carefully considered the oral arguments and briefs of the parties, the record in the case, and the applicable law. We believe that the district court reached the correct result and affirm, essentially on its rationale. *See Froelich v. Erickson*, 96 F. Supp. 2d. 507 (D. Md. 2000).

One issue requires brief further explanation. SCL maintains that the district court's rejection of its interpretation of Froelich's employment contract rested on a misunderstanding of that contract. Perhaps so. But on de novo review we agree with the district court that the employment contract entitles Froelich to separation pay.

The contract provides that Froelich is entitled to separation pay of a year's base salary and a "targeted bonus" if he is "terminated by the Company without cause during the Employment Period." The contract further provides that, "[t]he Employment Period shall commence on April 1, 1995, and shall continue for an initial period of six months. Thereafter, the Employment Period shall continue until terminated by the Company or the Executive upon 60 days advance, written notice."

Applying the objective theory of contract interpretation, as required by Maryland law, a court must determine how a reasonable person in the position of the parties would interpret this contract. SCL contends

that the contract only requires separation pay if the company terminates Froelich's employment without cause during the initial six month employment period or thereafter if the company fails to provide 60 days' advance written notice of his termination. In other words, SCL argues that it can end the "Employment Period" and thus deprive Froelich of all separation pay, simply by providing him 60 days' written notice of his termination. We disagree.

Like the district court, we believe a reasonable person would conclude that the contract provides that Froelich is entitled to separation pay because the company terminated him without cause during the employment period, which ended when Froelich's actual employment ended. Conversely, if the company had terminated him for cause or prior to the commencement of the employment period, or if Froelich had terminated his own employment, he would not have been entitled to separation pay. The "60 days advance, written notice" provision, most sensibly read, applies only to Froelich — requiring him to give advance notice to the company of his resignation and ensuring him a salary for those 60 days if he does so; it has nothing to do with separation pay.

To adopt SCL's interpretation would permit the company to avoid its obligation to provide separation pay any time after the initial six-month period, simply by notifying Froelich of his impending termination 60 days in advance. Such an interpretation would all but read the separation pay provision out of the contract, as we can envision few, if any, scenarios in which SCL would choose to pay Froelich a year's salary rather than 60 days' wages. Moreover, under SCL's reading, the company could terminate Froelich's "Employment Period" for the purpose of denying separation pay, even though Froelich's actual period of employment would continue for an additional 60 days. Without clear contractual language to that effect, we are unprepared to adopt such a counter-intuitive reading or believe that reasonable persons in the position of the parties would so interpret the contract.

*AFFIRMED*